999 So.2d 673 (2008)
Byron D. PARK, Appellant,
v.
CITY OF WEST MELBOURNE, Florida, Appellee.
No. 5D07-3726.
District Court of Appeal of Florida, Fifth District.
December 5, 2008.
Rehearing Denied January 28, 2009.
*674 Edward R. Gay, Orlando, for Appellant.
Charles Robinson Fawsett, P.A., of Shutts & Bowen, LLP, Orlando, for Appellee.
PER CURIAM.
Byron D. Park ["Park"] appeals the trial court's order entering judgment in favor of the City of West Melbourne, Florida ["City"] in his suit for declaratory relief, injunctive relief, and damages.
This case has been before this court on three prior occasions: Park v. City of West Melbourne, 769 So.2d 397, 398 (Fla. 5th DCA 2000) ["Park I"]; Park v. Ryan, 821 So.2d 1082 (Fla. 5th DCA 2002) ["Park II"]; and Park v. City of West Melbourne, 927 So.2d 5 (Fla. 5th DCA 2006) ["Park III"]. In essence, it concerns the decision of the City to discharge Park from his employment as a police officer. A brief summary of the prior proceedings is necessary. Mark Ryan ["Ryan"], the City's Chief Executive Officer, wrote Park a letter informing him of allegations against him and notifying him of Chief Brian K. Lock's recommendation that he be fired. Park had a pre-termination hearing before Ryan on February 19, 1998. Subsequently, in a letter dated March 3, 1998, Ryan informed Park that he had decided to accept Chief Lock's recommendation and terminate Park's employment.
Ryan's letter stated:
I advise you that you are entitled to a subsequent public, evidentiary hearing before a person selected and empowered by the City to set aside, modify or affirm this decision. The issue in this hearing would be whether the City's decision to terminate your employment was arbitrary, pretextual or for an improper motive. This hearing would meet the requirements of due process of law under the 14th Amendment of the United States Constitution and applicable statutory and case law.
If you wish to have such a hearing, please request it in writing to me within 15 days from the date of this letter. Your failure to request such a hearing in writing within such time will be considered a waiver of any right to such a hearing.
*675 Ryan's letter was generally consistent with the West Melbourne Police Department's Uniform Standards of Conduct Supplemental Manual, which was in effect during 1998. This manual provided:
If a member's employment is terminated or suspended without pay, he/she will be afforded a post discipline hearing. The purpose of this hearing will be for the member to present information, which would be heard by a Hearing Officer or Review Board at the discretion of the City, to decide if the disciplinary action should stand.
Park requested a public evidentiary hearing. The City appointed the town manager of the Town of Malabar, William Hall, to serve as the hearing officer. In a letter to Hall discussing the purpose of the hearing and the scope of his authority, Ryan wrote:
Thank you for agreeing to serve as Hearing Officer in a post disciplinary public evidentiary hearing involving a West Melbourne Police Officer. The purpose of this hearing is for you to determine whether the City's decision to terminate a police officer was or was not arbitrary, capricious, pretextual, or for an improper motive. You are hereby empowered to set aside, modify or affirm the City's decision following your review of the evidence presented at this hearing.
At the hearing that ensued, Hall received testimony, documents, and the arguments of counsel. In a decision dated September 21, 1998, Hall concluded that the City had failed to prove by a preponderance of the evidence that its termination of Park was for just cause. On this basis, Hall ordered Park's "immediate reinstatement as a police officer for the City of West Melbourne, along with back pay."
Rather than comply with Hall's decision, the City chose to appeal it, filing its Petition for Writ of Certiorari in the circuit court on October 20, 1998.[1] In its order on the City's petition, the trial court found that Park was not entitled to have the hearing officer weigh the evidence or the credibility of the witnesses, and granted the City's petition. It quashed the hearing officer's decision and confirmed the City's decision to discharge Park. Park sought certiorari review of the trial court's order. In Park I, which was filed on April 28, 2000, this Court quashed the circuit court's decision, rejecting the City's purported limitations on the hearing. The effect of this court's opinion was to reinstate the hearing officer's decision.
On May 7, 2001, the City communicated to Park that it had no intention of rehiring Park or giving him back pay. Subsequently, on May 18, 2001, Park filed a Petition for Writ of Mandamus in the circuit court in an effort to enforce the hearing officer's decision. The trial court announced (erroneously) that this Court's decision in Park I had only given Park the right to a "pre-termination hearing with rights of confrontation of witnesses" and denied Park's petition. Park appealed this decision and this Court affirmed the denial of mandamus, without comment, in Park II. In light of subsequent events, this Court's failure to explain its reason for denying mandamus was unfortunate.
Because of the trial court's erroneous interpretation of Park I and this Court's denial of mandamus relief, the parties met on November 4, 2002, for a second pre-termination hearing consistent with the trial court's decision that such a hearing was all Park was entitled to, during which *676 Park was permitted to cross-examine witnesses. Subsequently, in a letter dated November 22, 2002, Ryan reconfirmed his March 3, 1998, termination of Park's employment. Park did not request another post-termination hearing.
On July 2, 2003, Park filed the three-count complaint initiating this case. In it, Park mainly asked the trial court to declare that the hearing officer's September 21, 1998, decision, which followed the post-termination hearing, entitled him to reinstatement and back pay from the time of his termination to the time of his reinstatement. Alternatively, if the trial court found that the November 4, 2002, pre-termination hearing took precedence over the post-termination hearing, Park asked the court to determine that he was entitled to back pay from the date of his suspension to the time of Ryan's November 22, 2002, decision to terminate his employment following the pre-termination hearing.
On December 21, 2004, the City filed a motion for summary judgment against Park in this action. The trial court concluded that it had previously decided with finality, in the mandamus action, Park's lack of entitlement to reinstatement and back pay and granted the City summary judgment based on estoppel by judgment. Park again appealed, and, in Park III, this Court reversed, holding that estoppel by judgment did not bar Park's action "because no adjudication on the merits occurred in the mandamus proceeding." Additionally, this Court explained:
The trial court's decision to deny Park mandamus relief was predicated in large part on its belief that our opinion in Park I mandated that the City provide Park with a due process, evidentiary hearing. We think that conclusion misconstrues our earlier decisions. In Park I, we readopted our holding in Grice that "if the City is going to terminate someone on the basis of the testimony of other witnesses then the officer must, as a matter of constitutional due process, at some point-either a pre-termination hearing or at a post-termination hearing-be permitted to confront those witnesses and cross examine them." Grice, 697 So.2d at 190. We did not remand Park I with directions to hold a pre-termination hearing, nor could we have done so. "[A]fter review by certiorari, an appellate court can only quash the lower court order; it has no authority to direct the lower court to enter contrary orders." Gulf Oil Realty Co. v. Windhover Ass'n, Inc., 403 So.2d 476, 478 (Fla. 5th DCA 1981). When we quashed the circuit court's order in Park I, the hearing officer's ruling was left standing.
The City concedes that it was proper for Park to seek enforcement of the hearing officer's ruling by mandamus or declaratory relief. Park initially chose mandamus relief but was rebuffed on procedural grounds. That was not adjudication on the merits and does not bar this action.
Id. at 9-10.[2] Finally, in Park III, this Court expressly declined to rule on the *677 City's alternative defense that the statute of limitations barred Park's claim, "as it was never considered in the trial court."[3]Id. at 10.
After remand, the trial court again entered judgment for the City, this time ruling that Park's action was barred by the applicable statutes of limitation because more than four years had elapsed between the time the City filed its Petition for Certiorari in the circuit court and the commencement of Park's declaratory action. We reverse.
"A civil action or proceeding . . . shall be barred unless begun within the time prescribed in this chapter or, if a different time is prescribed elsewhere in these statutes, within the time prescribed elsewhere." § 95.011, Fla. Stat. (1998). However, a limitations period ordinarily does not begin to run until the plaintiff has a complete and present cause of action, and a cause of action does not become complete and present until the plaintiff can file suit and obtain relief. 35 Fla. Jur. 2d Limitations and Laches § 56; see also § 95.031, Fla. Stat. (1998).
Section 95.11(3)(p),[4] which is a catchall provision, may apply to claims for declaratory relief and claims for injunctive relief not otherwise addressed in section 95.11. Other courts have said so. See Hollywood Lakes Section Civic Ass'n, Inc. v. City of Hollywood, 676 So.2d 500, 501 (Fla. 4th DCA 1996); In re Estate of Vernon, 637 So.2d 365, 367 n. 4 (Fla. 4th DCA 1994). The City asserts that this four-year statute of limitations on Park's claim for declaratory relief began to run at the time it filed its Petition for Writ of Certiorari because Parker should have known at that point that the City was repudiating his claim for reinstatement and back pay and that he needed to seek enforcement of Hall's decision. The problem with that argument is that rather than simply repudiate the hearing officer's decision, the City appealed it. The decision was not enforceable until final; it was not final until the appeals were concluded and the issue was decided in Park's favor. In the appeal, the trial court quashed the hearing officer's decision before this Court quashed the circuit court's decision. Thus, the earliest that Park could have enforced *678 the hearing officer's decision was after April 28, 2000, when this Court filed its decision in Park I. Assuming the statute of limitations on the claims presented here for declaratory and injunctive relief to obtain reinstatement or recover back pay[5] is four years, because this action was filed on July 2, 2003, Park's claims for enforcement of the hearing officer's decision are not barred by the statute of limitations. Accordingly, we reverse the summary final judgment and remand for entry of a judgment for Park consistent with the decision of the hearing officer awarding Park reinstatement and back pay.[6]
REVERSED and REMANDED.
PALMER, C.J., GRIFFIN, J., and LAUTEN, F., Associate Judge, concur.
NOTES
[1] It appears that the filing of the petition triggered the automatic stay under Florida Rule of Appellate Procedure 9.310(b)(2) (1998).
[2] In his concurring opinion, Judge Torpy further explained:

The actual holding in Park I was that the hearing official had not exceeded the scope of his authority. Although the opinion does not expressly state its holding, because the lower court had quashed the hearing official's order for this reason, our order quashing the circuit court's order clearly mandated this conclusion. . . . Our mandate quashing the circuit court's order forecloses the city from further challenges to the authority of the hearing official.
Park v. City of W. Melbourne, 927 So.2d 5, 11 (Fla. 5th DCA 2006) (Torpy, J. concurring).
[3] The City filed a Petition for Review with Florida's Supreme Court in this case, which the Supreme Court denied on September 13, 2006.
[4] In part, section 95.11, Florida Statutes (1998) provides:

Actions other than for recovery of real property shall be commenced as follows:
(1) WITHIN TWENTY YEARS.  An action on a judgment or decree of a court of record in this state.
. . . .
(3) WITHIN FOUR YEARS.
. . . .
(f) An action founded on a statutory liability.
. . . .
(p) Any action not specifically provided for in these statutes.
. . . .
(4) WITHIN TWO YEARS.
. . . .
(c) An action to recover wages or overtime or damages or penalties concerning payment of wages and overtime.
Section 95.11(4)(c), which concerns wages and overtime, was "intended to cover claims for wages or overtime earned for services rendered or claims for improper withholding of wages such as during periods of suspension." Hullinger v. Ryder Truck Rental, Inc., 548 So.2d 231, 233 (Fla. 1989) (citations omitted) ("Hullinger's claim is based upon a wrongful discharge. The fact that his damages may include or even be limited to recovery for such quantifiable injuries as the wages he lost had he not been discharged does not mean that his claim is one `to recover wages.'"); see also McRae v. Douglas, 644 So.2d 1368, 1372 (Fla. 5th DCA 1994).
[5] Park's claim, contained in Count III, for back pay from the time of his suspension to the time Ryan confirmed his termination in November 22, 2002, was made in the alternative, in case the court found that the second pre-termination hearing and decision "cured" the due process violation identified in Park I and superseded the hearing officer's decision. This claim could not have begun to accrue until November 22, 2002, when Ryan made his decision to confirm Park's prior termination. This claim for back pay is premised on the idea that the City improperly withheld Park's wages from March 3, 1998 to the time that he was effectively terminated on November 22, 2002. The two-year statute of limitations contained in section 95.11(4)(c) does appear to apply to it, but since less than two years passed between the time the alternative claim for back pay accrued and the time this action was filed on July 2, 2003, the alternative claim also would not be barred by the statute of limitations.
[6] City has raised a series of additional defenses or issues on appeal, none of which have any merit and none of which are available in light of Park I.